IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN COSENZA, *on behalf of*                  :
*Himself and all others similarly*             :
*situated,*                                     :        Civil No. 3:21-CV-00487
                                               :
   Plaintiff,                                   :
                                               :        (Judge Mariani)
        v.                                      :
                                               :        (Magistrate Judge Carlson)
DISTRESSED ASSET PORTFOLIO                      :
III, LLC and UNIFUND CCR, LLC,                  :
                                               :
   Defendant.                                   :

## REPORT AND RECOMMENDATION

### I.    Introduction

This case has been referred to us on a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[1] (Doc. 5). The motion invites us to consider the legal sufficiency of a class action complaint for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), particularly, whether the complaint meets the requirements for standing in federal court under the Supreme Court's holding in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). The complaint alleges Unifund filed a complaint

---

[1] Because we recommend the case be dismissed based on the plaintiff's lack of standing, we do not address the defendants' 12(b)(6) motion on the merits.

against the plaintiff in the Lackawanna County Court of Common Pleas that was false, deceptive, and misleading in violation of 15 U.S.C. § 1692(e). The ways in which it was allegedly misleading invite the court to consider complex arguments regarding the plain meaning and interpretation of contractual language but altogether fails to allege that any such language was actually misinterpreted by the plaintiff or that he suffered any injury; tangible, intangible, or otherwise.

Thus, for the reasons that follow, we find that the plaintiff has not alleged that he suffered the kind of concrete and particularized harm necessary to confer standing on him to maintain this action. Accordingly, we will recommend that the defendant's motion be granted, and that the plaintiff's claims be dismissed without prejudice to the plaintiff timely filing a motion to remand the case to state court, which the District Court may decide is the more appropriate remedy. See Footnote 2, *infra*..

## II.   Background

The complaint arises from a fairly common set of circumstances as detailed in the plaintiff's Class Action Complaint. (Doc. 1-2). The plaintiff, Shawn Cosenza, opened a credit card account with Citibank, N.A. in August of 2017 and, after a period of timely payments, eventually defaulted on the account in March of 2018. (Id. at ¶¶ 14, 16). On February 25th, 2019, Citibank allegedly sold Cosenza's defaulted credit card account to Defendant Distressed Asset Portfolio III, LLC (DAP), which acquires defaulted consumer debts for the purpose of obtaining

payment. (Id. at ¶¶ 10, 11, 17). DAP subsequently assigned certain collection rights to its registered agent, Defendant Unifund, which specializing in the managing and servicing of defaulted consumer debts. (Id. at ¶¶ 6, 9, 18). Unifund then filed a complaint against Cosenza on January 28, 2020 in the Lackawanna County Court of Common Pleas, attempting to collect the defaulted Citibank account. (Id. at ¶¶ 21, 23).

At issue is exactly what rights were conferred through the assignment from DAP to Unifund, and whether the way these rights were communicated to Cosenza in the complaint, and other consumers in similar complaints, was materially false and misleading. The assignment of the Citibank account from DAP to Unifund stated:

> Assignor [DAP], for value received and in connection with the Agreement, transfers and assigns to Assignee [Unifund] all of Assignor's rights in the Receivables, for collection purposes only, including conducting litigation in Assignee's name, for those Receivables which Assignor owns or may acquire from time to time. *Assignor shall retain title and ownership of such Receivables.*

(Doc. 1-3) (emphasis added). The relevant portion of the complaint filed against Cosenza stated: "For collection purposes, Plaintiff [Unifund] is the current owner of, and/or successor to, the obligation sued upon, and was assigned all rights, title and interest to Defendant's **UNIFUND CCR, LLC**, account number ************2935 (hereinafter "the account"). (Doc. 1-2, at 21). The plaintiff alleges that this averment in the complaint was false, deceptive, and misleading in

that it asserted that Unifund was the owner of and had title to the account, when in fact DAP retained ownership of it under the assignment. (Doc. 1-2, ¶¶ 25-27). The plaintiff also avers that the use of the disjunctive term "or" in the complaint does not create a reasonable interpretation that the defendant was asserting that it was merely the owner *or* the successor, because the term "successor" is incomprehensible in this context since a debt holder succeeds the original creditor, not the obligation sued upon. (Id. at ¶ 31). Thus, the plaintiff asserts that the reader would understand the complaint to falsely state that "[Unifund] is the current owner of . . . the obligation sued upon . . . ." (Id. at ¶¶ 30). Further, Unifund holding itself out as the successor to the debt is also false, deceptive, and misleading because DAP was the actual successor to Citibank, not Unifund. (Id. at ¶¶ 32-33).

Thus, the plaintiff's FDCPA claim is not premised upon any allegations that the defendants misstated this debt, the amount owed, or falsely claimed that they had the ability to collect the debt when in fact they did not. Rather, the allegedly misleading aspect of the defendants' communications turns on the precise descriptions of the property interests they possessed, property interests which it is undisputed otherwise gave them the ability to engage in this debt collection

On March 18th, 2021, the plaintiff filed this case as a class action on behalf of himself and all other persons similarly situated, or those who received a collection complaint from Unifund containing the allegedly misleading language, with one

class seeking judgment against both Unifund and DAP and the second class seeking

judgment against only Unifund. (Id. at ¶¶ 39-42). In both counts, the plaintiff

requests statutory damages pursuant to 15 U.S.C. § 1692(a)(2)(B) and attorney's

fees pursuant to 15 U.S.C. § 1692k(a)(3), (Id. at ¶¶ 51, 53), but does not allege the

plaintiff suffered any actual damages resulting from the allegedly misleading

statements. (Doc. 11, at 8).

The defendants filed the instant motion to dismiss on March 25th, 2021. (Doc.

5). The motion has been fully briefed and is ripe for disposition. (Docs. 6, 11, 14).

For the reasons that follow, we recommend the defendants' motion be granted

without prejudice to the plaintiff timely filing a motion to remand the case to state

court, which the District Court may decide is the more appropriate remedy. See

Footnote 2, *infra*.

### III.   Discussion

### A. Motion to Dismiss – Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a

complaint for "lack of subject matter jurisdiction." A motion to dismiss under Rule

12(b)(1) thus challenges the power of the court to hear a case or consider a

claim. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When faced

with a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has

jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir.

2000); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)

("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff

must bear the burden of persuasion").

Motions under Rule 12(b)(1) come in two varieties. First, a "facial" attack

"contests the sufficiency of the pleadings." Common Cause of Pa. v. Pennsylvania,

558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458

F.3d 187-88 (3d Cir. 2006)). Such a facial challenge "attacks the complaint on its

face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the

court 'to consider the allegations of the complaint as true.'" Hartig Drug Company,

Inc. v. Senju Pharmaceutical Co., Ltd., ___ F.3d ____, 2016 WL 4651381, *4 (3d

Cir. Sept. 7, 2016). Thus, in ruling on such a motion, the court assumes the truth of

the allegations in the complaint but must analyze the pleadings to determine whether

they state an action that comes within the court's jurisdiction. United States ex rel.

Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). A facial 12(b)(1)

motion should be granted only if it appears certain that the assertion of subject-matter

jurisdiction is improper. Kehr Packages, 926 F.2d at 1408-09; Empire Kosher

Poultry, Inc. v. United Food & Com. Workers Health & Welfare Fund of Ne. Pa.,

285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject-matter jurisdiction asserts that,

although the pleadings facially satisfy jurisdictional requirements, one or more

allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction. Carpet Group, Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's ... very power to hear the case" is in dispute. Mortensen, 549 F.2d at 891.

In this case, the defendants have presented the Court with a facial challenge to subject-matter jurisdiction by arguing that, even accepting the plaintiff's allegations as true, they are insufficient to demonstrate injury-in-fact, since the plaintiff has not suffered any concrete and particularized injury stemming from the alleged FDCPA violations. The Court thus should accept the allegations in the plaintiff's amended complaint as true and determine whether those facts as alleged are sufficient to establish subject-matter jurisdiction over the claims. !

## B. **This Motion to Dismiss Should Be Granted.**

The defendants have moved to dismiss the plaintiff's claims, arguing that the plaintiff lacks standing because he has not alleged that he suffered an injury-in-fact as a result of receiving the allegedly false and misleading collection complaint from Unifund.

The issue of standing is one of constitutional significance and is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v.

Defs. of Wildlife, 504 U.S. 555, 560 (1992). "To establish Article III standing, a plaintiff must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 272 (3d Cir. 2016) (quoting Finkelman v. National Football League, 810 F.3d 187, 193 (3d Cir. 2016)). To allege an injury-in-fact, "a plaintiff must claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" Id. Harm is deemed to be particularized "if it 'affect[s] the plaintiff in a personal and individual way.'" Id. An injury is concrete "if it is 'de facto; that is, it must actually exist' rather than being only 'abstract.'" Id. (quoting Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).

The Supreme Court has directly addressed the issue of standing where a plaintiff alleges only statutory damages. In Spokeo, the plaintiff alleged that Spokeo, an online background check firm, had reported inaccurate information about him to its customers. The plaintiff sued alleging that the misreporting to third parties violated the FCRA, and the Ninth Circuit concluded that he had standing based upon his "personal interests in the handling of his credit information," as well as because of the alleged "violations of his statutory rights created by the [Act]." Robins v. Spokeo, Inc., 742 F.3d 409, 413 (9th Cir. 2014). The Supreme Court granted

certiorari to address whether "Congress may confer Article III standing upon a

plaintiff who," like the plaintiff here, "suffers no concrete harm, and who therefore

could not otherwise invoke the jurisdiction of a federal court, by authorizing a

private right of action based on a bare violation of a federal statute." Id. (quoting

Supreme        Court,        No.        13-1339,        Question        Presented,

http://www.supremecourt.gov/qp/13-01339qp.pdf).   Ultimately, the Court did not

specifically answer that question, but instead vacated the judgment of the Ninth

Circuit Court of Appeals and remanded the case for further proceedings, including

to determine whether the plaintiff had standing in light of the instruction and

guidance set forth in its opinion. The Court found that the Ninth Circuit had erred

because it focused exclusively on whether the plaintiff had alleged a "particularized"

injury, without also considering whether the injury was "concrete." Spokeo, 136 S.

Ct. at 1550 ("Because the Ninth Circuit failed to fully appreciate the distinction

between concreteness and particularization, its standing was incomplete"). The

Supreme Court also made clear, however, that "Congress cannot erase Article

III's standing requirements by statutorily granting the right to sue to a plaintiff who

would not otherwise have standing." Id. at 1547-48. The Court went further:

> Congress' role in identifying and elevating intangible harms does not
> mean that a plaintiff automatically satisfies the injury-in-fact
> requirement whenever a statute grants a person a statutory right and
> purports to authorize that person to sue to vindicate that right. Article
> III standing requires a concrete injury even in the context of a statutory
> violation. For that reason, [the plaintiff] could not, for example, allege

a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

Id. at 1549 (citation omitted); see also id. at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm"). The Court explained that if a consumer reporting agency failed to provide required notices to a user of the agency's consumer information, like an incorrect zip code, that allegation alone might be insufficient to confer standing on a plaintiff because it is "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Id. at 1550. Furthermore, the Court emphasized that for an injury to be "concrete" it cannot be wholly abstract or conjectural; the injury must "actually exist." Id. at 1548.

The Court also recognized that intangible harms can sometimes be sufficient to create Article III standing, since "concrete" is not necessarily the same as "tangible." Id. at 1549. In considering whether intangible injuries are sufficiently concrete to give rise to standing, the Supreme Court instructed that courts should look to "both the history and the judgment of Congress," id., noting that with respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. The Court recognized that, although Congress cannot elevate all intangible harms so that they satisfy the injury-in-fact requirement of Article III standing, in some cases "the violation of a procedural right

10

granted by statute can be sufficient . . . to constitute injury in fact," and that, in those cases, a plaintiff "need not allege any additional harm beyond the one Congress has identified." Id. Nevertheless, it is clear after Spokeo that, for a procedural violation to satisfy the injury-in-fact requirement, the procedural violation must constitute a "concrete" harm. Id.

Since Spokeo, the Third Circuit Court of Appeals has had occasion to apply its holding in cases where challenges to standing were made. For example, in In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 274 (3d Cir. 2016), the plaintiffs were a class of children who alleged that an online website improperly tracked their usage and shared the information with other entities in violation of federal law, including the Video Privacy Protection Act, the Wiretap Act, and the Stored Communications Act. The defendant argued that the children had not suffered any injury, relying on Spokeo. The Third Circuit disagreed:

> None of [Spokeo's] pronouncements call into question whether the plaintiffs in this case have Article III standing. The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., ***the unlawful disclosure of legally protected information.*** Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," [*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)] noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

Nickelodeon, 827 F.3d 262 at 274 (emphasis added). The Third Circuit followed Spokeo's admonition that courts consider also the "history and judgment of Congress" to see if the alleged injury was sufficiently concrete, Spokeo, 136 S. Ct. at 1549, and found that this factor supported the conclusion that the alleged injuries suffered – namely, the unlawful disclosure of legally protected information – was sufficiently concrete to confer standing. Id.

This Court has also found that a plaintiff had adequately pleaded facts to establish standing where the plaintiff alleged that the defendant violated the Fair Debt Collection Practices Act by sending a collection notice that revealed the plaintiff's personal information through the envelope's glassine window, Daubert v. NRA Group, LLC, Civ. A. No. 3:15-cv-00718, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016), and, most recently, where a plaintiff alleged a violation of the FDCPA where a debt collector failed to indicate whether interest was accruing on the debt and then adding interest without explaining that the plaintiff's balance would increase. Johnson v. Patenaude & Felix, A.P.C., No. 3:20-CV-1791, 2021 WL 3260064, at *1 (M.D. Pa. July 29, 2021). Notably, in both cases, the Court's conclusion regarding standing was based upon a real, concrete, identifiable risk of harm which flowed directly from the defendants' allegedly false or misleading communications.

Other courts addressing other claims on slightly different facts have come out the other way. For example, in <u>Jamison v. Bank of Am., N.A.</u>, 194 F. Supp. 3d 1022 (E.D. Cal. 2016), the court concluded that a plaintiff lacked standing to sue for violations of the Truth in Lending Act where mortgage payments sent to the plaintiff himself contained inaccurate information. In <u>Gubala v. Time Warner Cable, Inc.</u>, No. 15-1078-PP, 2016 WL 3390415 (E.D. Wis. June 17, 2016), the district court found that a plaintiff lacked standing to sue under the Cable Communications Privacy Act where the plaintiff alleged speculative harms, including that the defendant failed to destroy the plaintiff's personal information after he had terminated his cable service, since the bare possibility that the plaintiff's information could be disclosed to third parties was too speculative and insufficient to establish a concrete injury. !

In <u>Smith v. Ohio State Univ.</u>, 191 F. Supp. 3d 750 (S.D. Ohio 2016), the plaintiffs had applied to work at The Ohio State University, and alleged that the university had violated the FCRA during the hiring process when it asked for consent to pull their credit reports to do background checks. The plaintiffs alleged that the university violated their rights after providing a disclosure and authorization form to the plaintiffs that included extraneous information such as a liability release. The plaintiffs eventually were hired by the university but claimed that they suffered injury in the application process by having their privacy and statutory rights violated.

Relying on Spokeo and other cases, the university moved to dismiss for lack of

jurisdiction, and the district court agreed:

> In determining whether Congress has elevated FCRA breaches to the
> status of legally cognizable injuries, the Supreme Court held that [a]
> violation of one of the FCRA's procedural requirements may result in
> no harm." In this case, plaintiffs allege they suffered harm when their
> "privacy was invaded and they were misled as to their rights under the
> FCRA." However, plaintiffs admitted that they did not suffer a concrete
> consequential damage as a result of OSU's alleged breach of the FCRA.
> Without a concrete and particularized injury-in-fact, there is no Article
> III standing in this Court.

Id. at 757 (citations omitted). Other courts have reached similar conclusions, where

plaintiffs have attempted to predicate standing upon a bare procedural violation

without alleging any actual concrete injury resulting from that violation. See,

e.g., Dolan v. Select Portfolio Servicing, No. 03-CV-3285 PKC AKT, 2016 WL

4099109 (E.D.N.Y. Aug. 2, 2016).

The case at bar is distinguishable from the Nickelodeon litigation and

the Daubert and Johnson cases, all of which involved allegations that the defendants

had engaged in conduct that the courts found not only to be procedural and statutory

violations, but violations that were alleged to have caused actual concrete injury to

the plaintiffs. In this case, by way of contrast, the plaintiff has alleged only that

Unifund violated the terms of the FDCPA by overstating its entitlement to the debt.

Notably, the plaintiff does not argue that Unifund was not entitled to collect the debt

or that Mr. Cosenza did not owe the debt, but alleges only that the statement in the

14

debt collection complaint stated that Unifund was the owner of the account when instead it only had equitable title to collect the debt on behalf of DAP. This claim relies on allegedly ambiguous interpretations of the language of both the debt collection complaint and the assignment, but seemingly asserts no claim that the plaintiff misinterpreted the complaint or that the language affected the disposition of the debt or Cosenza's obligation in any way. The plaintiff has stated directly that it has not attempted to make any allegations that would resolve the standing issue, merely baldly stating that the Court *could* find standing based on intangible injuries, but not stating what intangible injuries the plaintiff actually suffered. Indeed, it is "difficult to imagine" how the plaintiff's interpretation of Unifund's equitable versus legal entitlement to the debt "could work any concrete harm," Spokeo at 1550, where it is undisputed that Unifund has the legal right to collect the debt from the plaintiff. Since the plaintiff has failed to explain to us any injury that "actually exist[s]," Id. at 1548, it is clear the plaintiff is relying on the fact of the procedural violation alone to establish standing, which Spokeo has instructed is insufficient in cases just like this.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendant's motion to dismiss (Doc. 5) be GRANTED without prejudice to the

plaintiff timely filing a motion to remand the case to state court, which the District

Court may decide is the more appropriate remedy.[2]

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof. Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall

---

[2] We note that plaintiff forewent a vigorous argument that he has standing to bring
this action in federal court, instead essentially requesting the court to find he does
not have standing so as to not "bear the risk that this Court could rule that there is
standing, only to have the Third Circuit hold otherwise on appeal . . . essentially
negat[ing] years of litigation, just for the case to have to begin anew in state court."
(Doc. 11, at 10). To avoid this outcome, the plaintiff has requested this Court
remand the case to state court rather than dismiss the complaint entirely, arguing
that the plain language of 28 U.S.C. § 1447(c) mandates that where a federal court
lacks subject-matter jurisdiction it must remand the case to the state court from
which it was removed. (See Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208,
213 (3d Cir. 1997); Katz v. Six Flags Great Adventure, LLC, No.
CV18116FLWDEA, 2018 WL 3831337, at *8 (D.N.J. Aug. 13, 2018)). While the
Third Circuit seems to support this remedy, the plaintiff has not formally requested
this relief in a motion to remand the case, rather asserting this argument as a
defense to dismissal. Thus, we find the appropriate course here is to grant the
defendants' motion for dismissal without prejudice to the plaintiff timely filing a
motion to remand the case to state court, which the District Court may decide is the
more appropriate remedy.

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of March 2022.


                                        s/ Martin C. Carlson
                                        Martin C. Carlson
                                        United States Magistrate Judge